IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BARRY E. MUSSER,** : | |
|     **Plaintiff** : | Civil No. 1:14-CV-2041 |
| : | |
| v. : | |
| : | |
| **HARLEYSVILLE LIFE** : | |
| **INSURANCE COMPANY &** : | |
| **RELIANCE STANDARD LIFE** : | |
| **INSURANCE COMPANY d/b/a** : | |
| **CUSTOM DISABILITY** : | |
| **SOLUTIONS,** : | |
| : | Sylvia H. Rambo |
|     **Defendants** : | |

# M E M O R A N D U M

        In this civil action, Plaintiff has filed suit against the administrators of his employer's long term disability plan to recover benefits he claims are due to him. Presently before the court is Plaintiff's motion to determine the standard of review and supplementation of the record, wherein Plaintiff argues that the court should review the administrators' denial of his benefits *de novo* and permit discovery beyond the administrative record. Defendants, in contrast, contend that the court should apply an arbitrary and capricious standard of review and not permit additional discovery. For the reasons set forth below, the court finds that the denial of benefits will be reviewed *de novo* and that no further discovery is warranted under the facts of this case.


# I. Background

## A. Factual Background

At all times relevant hereto, Plaintiff Barry Musser ("Plaintiff") was a certified public accountant and certified financial planner employed by Hamilton & Musser, P.C., an accounting firm that offered a long term disability plan (the "Plan") through insurance provided by Defendants Harleysville Life Insurance Co. ("Harleysville") and Reliance Standard Life Insurance Company d/b/a Custom Disability Solutions ("CDS") (collectively, "Defendants"). As a participant in the Plan, which was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff began receiving long term disability payments in 2009 in the amount of $7,000 per month after he was diagnosed with cancer and became unable to work due to the associated treatments. On January 5, 2011, Plaintiff returned to work part-time, and thereafter self-reported his earnings on a monthly basis to CDS. Based on those reports, CDS proportionately reduced the benefits paid to him under the Plan.

After providing long term disability benefits to Plaintiff for nearly four years, CDS issued a letter to Plaintiff on June 6, 2013 indicating that it had completed a review of his claim file and determined that he was no longer eligible for continued benefits, retroactive to January 1, 2012, because he no longer satisfied the definition of disability and his monthly earnings exceeded eighty-percent of his indexed pre-disability earnings. (Administrative Record ("A.R."), pp. 359-65.) Specifically, CDS explained that, while calculating his partial payroll in February 2013, it observed that Plaintiff's net earnings exceeded his gross earnings. (*Id.* at p. 362.) Since this is "not [a] typical" scenario, CDS forwarded Plaintiff's file to a

certified public accountant who noted that, while Plaintiff's "Basic Monthly Earnings" calculation properly included income derived from his employer only, his "Current Monthly Earnings" calculation should include income derived from both his employer and other sources. (*Id.*) After including income allegedly received by Plaintiff from Central Penn Advisors for financial planning services in Plaintiff's current monthly earnings calculation, the accountant determined that Plaintiff's earnings had exceeded the eighty-percent limit as of January 1, 2012. (*Id.*) Consequently, CDS informed Plaintiff that his claim had been overpaid by $81,645.04, and directed him to remit a payment in that amount within 21 days. (*Id.* at p. 364.) CDS further advised Plaintiff that he could request a review of its determination in writing within 180 days, and that a "final determination" regarding the appeal would be rendered within 45 days. (*Id.*) However, in the event "special circumstances require[d] an extension of time for processing," CDS indicated that Plaintiff would "be notified of [its] decision no later than 90 days from the date" CDS received his request for review. (*Id.*) Plaintiff, through counsel, timely appealed CDS's June 6, 2013 determination.

By letter dated January 16, 2014, CDS denied Plaintiff's appeal, stating that it was "unable to alter [its] previous determination" of June 6, 2013. (*Id.* at p. 183.) However, rather than affirming its prior determination that Plaintiff's claim had been overpaid by $81,645.04 due to his income exceeding the eighty-percent threshold as of January 1, 2012, CDS advised Plaintiff that his claim had been overpaid by $141,324.71, retroactive to January 1, 2011, and requested reimbursement in that amount. (*Id.*) The letter included an explanation of the

methodology and calculations utilized by CDS in arriving at its determination, stating, in part:

> A financial analysis of the income tax, payroll, and employer representations received after benefits were approved and paid ultimately found that Mr. Musser's partial return to work earnings exceeded the 80% threshold as of January 1, 2011. In addition, because of Mr. Musser's 2009 wages from Hamilton & Musser, P.C. and 2009 commissions from Central Penn Advisors, his Monthly Rate of Basic Earnings (MBE) or pre-disability earnings have been calculated at $14,674.08 per month, and as such, for the period of September 30, 2009 through December 31, 2009, Mr. Musser was not eligible for the $7,000 monthly benefit. Furthermore, based on an analysis of Mr. Musser's income tax records and supporting documentation, partial [long term disability] benefits were payable only for nine months: April 2010 through December 2010, in the monthly amount of $4,126.33. For the period of September 30, 2009 through the date benefits were terminated, Mr. Musser was paid [long term disability] benefits in the amount of $178,461.71, but should only have been paid $37,137.00 for the limited period in 2010, based on our analysis of his earnings record for 2009 through 2012. As such, his LTD claim has been overpaid in the amount of $141,324.71.

(*Id.* at p. 185.)

Just as it had provided Plaintiff the opportunity to appeal its prior determination, CDS informed Plaintiff of his right to appeal the January 16, 2014 determination, as well as his ability to submit additional information in support of his appeal, as follows:

> Since this calculation represents a *new determination* on [your] claim, you may request a review of this determination by submitting your request in writing to [CDS].
>
> This written request for review must be submitted within 180 days of your receipt of this letter. Your request should state any reasons why you feel this determination is

> incorrect, and should include any written comments, documents, records, or other information relating to Mr. Musser's claim for benefits. Only one review will be allowed, and your request must be submitted within 180 days of your receipt of this letter to be considered.
>
> Under normal circumstances, you will be notified in writing of the final determination within 45 days of the date we receive your request for review. If we determine that special circumstances require an extension of time for processing, you will ordinarily be notified of the decision no later than 90 days from the date we receive your request for review.

(*Id.* (emphasis supplied).)

On July 15, 2014, Plaintiff, through counsel, timely filed an appeal to the January 16, 2014 determination (*id.* at pp. 169-174), and in support thereof, submitted a report by an insurance industry expert disputing the reasoning and analysis employed by CDS in reaching its January 16, 2014 determination (*see id.* at pp. 162-167; Doc. 24, p. 4 of 15).

On July 18, 2014, CDS, by letter, informed Plaintiff that it was in receipt of his appeal as follows:

> We wish to acknowledge receipt of your appeal of our decision to deny Barry Musser's claim for Long Term Disability benefits. Your letter was received in our office on July 16, 2014. At this time[,] Mr. Musser's file has been referred to the Appeals Unit where it will be reviewed in its entirety, along with any new information submitted for consideration.
>
> Under ERISA guidelines, the Appeals Unit has 45 days from our receipt of your appeal to provide you with a final claim determination in writing. If additional time is necessary to complete the review, you will be advised in writing of the specific reason, and an extension (up to an additional 45 days) will be requested.

(A.R., p. 252.)

5

CDS did not issue a final claim determination within the 45-day period for review, which ended on August 30, 2014. Rather, in a letter dated August 30, 2014,[1] CDS requested an extension of time of up to 45 days to complete their review and advised Plaintiff that he may expect a final determination no later that October 14, 2014. (*Id.* at p. 126.) CDS, however, has yet to render a decision on Plaintiff's July 15, 2014 appeal, some 387 days later. (Doc. 19, p. 9 of 29; Doc. 22, p. 10 of 31.)

### B. Procedural Background

Plaintiff initiated this lawsuit by filing a complaint on October 23, 2014, wherein he asserted a claim for wrongful denial of benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). (Doc. 1.) On December 23, 2014, Defendants filed an answer and a counterclaim to recover overpayment of benefits pursuant to 29 U.S.C. § 1132(a)(3). (Doc. 5.) Following a case management conference, the court issued an order directing Plaintiff to file a motion and supporting brief as to the appropriate standard of review and supplementation of the record. (Doc. 17.) Pursuant to the order, Plaintiff filed the instant motion (Doc. 18) and brief in support thereof on March 13, 2015 (Doc. 19). Defendant filed a brief in opposition on March 30, 2015 (Doc. 22), and Plaintiff replied on April 16, 2015 (Doc. 24). Thus, the motion is ripe for consideration.

---

[1] Plaintiff alleges that CDS's letter requesting an extension of time, while dated August 30, 2014, was postmarked September 12, 2014, which was beyond the initial 45-day deadline. (Doc. 1, ¶ 41; Doc. 19, p. 9 of 29.)

## II.	Discussion

In their respective motions, Plaintiff argues that the court should apply a *de novo* standard of review, whereas Defendants contend that the more deferential arbitrary and capricious standard should apply.  In addition, Plaintiff seeks to supplement the record with additional discovery beyond the administrative record, while Defendants argue that additional discovery is unnecessary.  The court will first address the appropriate standard to be applied to this case before considering whether additional discovery is warranted, as the latter consideration hinges on the applicable standard of review.

### A.	Standard of Review

In his motion, Plaintiff argues that Defendants' failure to decide his July 15, 2014 appeal from the termination of his disability claim within the time limits established by ERISA, as well as Defendants' own policies, permits the court to review CDS's decision *de novo*.  Defendants counter by arguing that an action to recover plan benefits under ERISA should be judicially reviewed under an arbitrary and capricious standard when, as in this case, the Plan expressly reserves discretionary authority to determine eligibility for benefits or to construe the terms of the Plan to the plan administrator, and the plan administrator has exercised such discretion.

Although ERISA itself "does not specify the standard of review that a trial court should apply in an action for wrongful denial of benefits," *Post v. Hartford Ins. Co.*, 501 F.3d 154, 160 (3d Cir. 2007), the Supreme Court has held that "a denial of benefits challenge under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the benefit plan gives the administrator such discretion, the denial of benefits is to be reviewed under an arbitrary and capricious standard, *id.*, wherein "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable,'" *Conkright v. Frommert*, 559 U.S. 506, 508 (2010). As the administrators of the Plan, Defendants bear the burden of establishing the applicability of a deferential standard of review. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citing *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999)).

The parties agree that the Plan grants CDS the discretionary authority which would typically warrant the deferential standard of review to be applied. Plaintiff argues, however, that CDS's failure to comply with ERISA-mandated time limits in deciding his July 15, 2014 appeal requires the court to apply the same *de novo* standard of review that would be required if discretion had not been vested in CDS.

On June 6, 2013, CDS informed Plaintiff that he was not eligible for continued benefits and claimed that he had been overpaid by $81,645.04, retroactive to January 1, 2012. Plaintiff timely sought an administrative appeal of that decision, pursuant to which CDS, by letter dated January 16, 2014, issued a "new determination," which increased CDS's demand for reimbursement from $81,645.04 to $141,324.71. The January 16, 2014 letter explicitly provided that Plaintiff could administratively appeal that decision to CDS within 180 days and that a final determination regarding the appeal would be issued within 45 days of the date it was

received, unless special circumstances required a 45-day extension. Plaintiff timely sought such an appeal by letter dated July 15, 2014.

CDS's 45-day deadline to decide Plaintiff's appeal emanates from ERISA's requirement that, "[i]n accordance with regulations of the Secretary [of Labor], every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); *LaAsmar v. Phelps Dodge Corp.*, 605 F.3d 789, 797 (10th Cir. 2010). The regulations implementing that "reasonable opportunity" for review obligation require, *inter alia*, that the plan administrator notify a claimant of the plan's benefit determination within 45 days after receipt of the claimant's request for review by the plan, unless special circumstances require an extension of time for processing the claim. 29 C.F.R. § 2560.503-1(i)(1)-(3). If the plan administrator determines that an extension of time is required, "written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period," but "in no event shall such an extension exceed a period of [45] days from the end of the initial period." *Id.* Thus, under both the Plan and the applicable regulations, an appeal from a denial of benefits must be resolved within a maximum of ninety days.

The parties do not dispute that Plaintiff filed his second appeal on July 15, 2014, or that Defendants have yet to issue a decision on that appeal, more than one year later. The question is thus whether Defendants' failure to issue a timely decision—or rather, failure to issue any decision—on Plaintiff's second appeal deprives Defendants of the deference to which they would otherwise be due.

In answering that question, Plaintiff argues that the court should rely on *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir. 2002). In *Gritzer*, the Third Circuit applied *de novo* review to a plan that otherwise granted discretion to the administrator based upon the plan administrator's failure to analyze or make any decision on the appellants' claims until five months after litigation commenced. *Id.* at 295. Turning to an analogy between ERISA and trusts, the Third Circuit stated that, "[w]here a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." *Id.* (citation omitted); *accord Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003) ("[T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion.") Because Defendants failed to issue a decision on his July 15, 2014 appeal, Plaintiff argues that Defendants forfeited its privilege to exercise their discretion, and the court should therefore apply *de novo* review.

Defendants contend that *Gritzer* is distinguishable from the instant case because there the plan did not respond at all to the appellants' initial claim until five months after litigation commenced, whereas here CDS exercised discretion in the course of terminating Plaintiff's benefits by interpreting the plan, calculating an overpayment, and denying Plaintiff's first appeal. Emphasizing the *Gritzer* court's statement that it would agree with the district court's application of the arbitrary and capricious standard "[h]ad discretion in fact been exercised in the course of denying benefits," *Gritzer*, 275 F.3d at 295, Defendants essentially argue that the court

should defer to the reasoning and analysis provided in CDS's January 16, 2014 decision on Plaintiff's first appeal.

That decision, however, is not entitled to any such deference. In its June 6, 2013 denial of benefits letter, CDS indicated, *inter alia*, that it was terminating Plaintiff's benefits, retroactive to January 1, 2012, because his current monthly earnings, as derived from both his employer and other sources, exceeded eighty-percent of his indexed pre-disability earnings. In its January 16, 2014 determination, however, CDS employed entirely new methodology and calculations to arrive at a self-described "new determination" that is markedly different from the June 6, 2013 initial determination. For example, the June 6, 2013 initial determination calculated Plaintiff's Monthly Rate of Basic Earnings, *i.e.*, his pre-disability earnings, at $11,933.33, whereas the January 16, 2014 determination calculated this figure at $14,674.08. Significantly, CDS further reduced and denied Plaintiff's benefits by finding that Plaintiff's earnings exceeded the eighty-percent threshold as of January 1, 2011, in contrast to its initial determination that those earnings exceeded that threshold on January 1, 2012, and by requesting recoupment of an alleged overpayment in the amount of $141,324.71, nearly twice the amount it initially claimed to have overpaid. As such, the January 16, 2014 "new determination" effectively superseded the June 6, 2013 initial determination by further reducing Plaintiff's benefits under the Plan, and, therefore, is an adverse benefit determination from which appeal lies under ERISA. *See* 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" to include "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit"). Indeed, CDS appropriately provided Plaintiff the opportunity

to appeal the new adverse determination in its January 16, 2014 letter, expressly stating, in accordance with ERISA, that he may request a review of the decision within 180 days and that he should include therein any additional information relating to his claim. *See* 29 C.F.R. § 2560.503-1(h)(2)(i)-(ii) (requiring that the claimant be provided appropriate notice and an opportunity to submit documentation and evidence supporting his claim); *id.* at § 2560.503-1(h)(2)(iv) & (3)(ii) (requiring that the plan administrator's review "take[ ] into account all [additional information] . . . without regard to whether such information was submitted or considered in the initial benefit determination," and be "conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual"). The letter further provided that CDS would issue a final determination within, at most, 90 days, in conformity with ERISA's regulatory deadlines. *See id.* at § 2560.503-1(i)(3). However, no such final determination was made. [2]

   As the Third Circuit has noted, once a claim is brought in federal court, it is the "plan administrator's final, post-appeal decision [that] should be the focus of review. . . . To focus elsewhere would be inconsistent with ERISA's exhaustion requirement." *Funk v. Cigna Group Ins.*, 648 F.3d 182, 191 n.11 (3d Cir. 2011) (noting that the district court improperly focused on the plan administrator's initial

---

[2] Defendants' attempt to characterize Plaintiff's July 15, 2014 appeal as voluntary is not only contrary to ERISA's requirement that an appeal be provided following an adverse benefit determination, but it is also belied by CDS's admonishment to Plaintiff that his failure to request review within 180 days of his receipt of the letter may constitute a failure to exhaust his administrative remedies and may affect his ability to bring a civil action. (A.R., p. 186.) Thus, according to Defendants, Plaintiff had not exhausted his administrative remedies as of January 16, 2014, and was required to appeal the "new determination" to do so. Defendant's argument that Plaintiff's July 15, 2014 appeal was voluntary is, therefore, without merit. *See* 29 C.F.R. § 2560.503-1(c)(3)(iii) (permitting voluntary appeals only after administrative appeals have been exhausted).

decision rather than its final decision). As discussed above, while ostensibly labeled a post-appeal decision, the January 16, 2014 decision was effectively a new adverse benefit determination that, by utilizing entirely new methodology and arriving at a significantly increased overpayment calculation, rendered inoperative the initial June 6, 2013 determination. Because no determination has been rendered on Plaintiff's appeal of the January 16, 2014 decision, there is no analysis to which the court may defer, *see Gritzer*, 275 F.3d at 295, and, therefore, the *de novo* standard of review applies.

    The significance of an administrator exercising its discretion in deciding an appeal relative to the standard of review to be employed by the court was well-stated by the Northern District of California:

> The administrative appeals process provides an important 'second look' at the plan administrator's initial determination and justifies a more deferential review by the district court. Thus, where the plan administrator fails to resolve an appeal—or at least declines to issue a decision before the claimant has invested substantial time and resources litigating in federal court—it is more than a 'technical violation[ ] of ERISA's requirements.' *Gatti v. Reliance Std. Life. Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005)]. In such an instance, the administrator . . . 'has forfeited the privilege to apply his or her discretion.' *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006) (citing *Gritzer*, 275 F.3d at 296).

*Langlois v. Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011). The same reasoning applies here. Because CDS has failed to exercise its discretion by resolving Plaintiff's July 15, 2014 appeal of its January 16, 2014 determination, there is no analysis to which deference may be afforded.

    The court's conclusion is further bolstered by the Department of Labor's commentary, in enacting the new regulations, that it intended "to clarify that

the procedural minimums of [Section 2560.503-1] are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." 65 Fed.Reg. 70246-01, 70255 (Nov. 21, 2000).[3]

    Significantly, there do not appear to be any special circumstances justifying Defendants' substantial delay in deciding Plaintiff's July 15, 2014 appeal. Indeed, Defendants have not provided any credible explanation as to why they have yet to issue a final determination. Instead, Defendants rely on *Conkright v. Frommert*, 559 U.S. 506 (2010), to suggest that their failure to issue a decision on Plaintiff's second appeal was a single mistake, and, as such, it was insufficient to deny them the deference to which they would otherwise be afforded. In *Conkright*, the Supreme Court reversed a Second Circuit decision that the district court need not use a deferential standard of review on remand when a plan administrator's previous construction of the same plan terms was found to violate ERISA. *Id.* at 513-14 (noting that under the Second Circuit's view the district court "was entitled to reject a reasonable interpretation of the Plan offered by the Plan Administrator, solely because the Court of Appeals had overturned a previous interpretation by the Administrator," and referring to this approach as "one-strike-and-you're-out"). In allowing the administrator a second chance for deferential review, the Supreme Court noted the plan's grant of discretion to the administrator and the importance of *Firestone* deference to the balancing of interests under ERISA. The Court explained

---

   [3] While the court finds the Department of Labor's intentions regarding the judicial scope of review noteworthy, it recognizes that those intentions may not be entitled to *Chevron* deference. *See Seger v. ReliaStar Life*, Civ. No. 3:04-cv-16/RV/MD, 2005 WL 2249905, *9 (N.D. Fl. Sept. 14, 2005).

14

that "a single honest mistake in plan interpretation" does not strip the plan administrator's discretion or justify *de novo* review for subsequent related interpretations. *Id.* at 517.

The facts in *Conkright*, however, are distinguishable from the case *sub judice* where the Defendants have yet to issue a decision on Plaintiff's appeal. Such inaction—continuing even after a lawsuit was filed—for over a year cannot reasonably be deemed a "single honest mistake," and the court accords little weight to Defendants' rationale that they have withheld issuing a post-litigation determination out of deference to the court. The court's research has uncovered a wealth of case law involving decisions by insurance companies issued following commencement of litigation. *See, e.g.*, *Conkright*, 559 U.S. at 510-11; *Gritzer*, 275 F.3d at 295; *Rasenack v. AIG Life Ins.* Co., 585 F.3d 1311, 1314-15 (10th Cir. 2009); *Ott v. Litton Indus., Inc.*, Civ. No. 4:04-cv-763, 2005 WL 1215958, *4 (M.D. Pa. May 20, 2005). While Defendants' proffered reason for failing to do the same here is an excuse based in argument, it fails to qualify as a justification based in law. Indeed, as Defendants themselves point out, some courts have reviewed for abuse of discretion untimely post-litigation decisions by administrators. *See, e.g.*, *Wedge v. Shawmut Design*, Civ. No. 12-cv-5645, 2013 WL 4860157, **8-9 (S.D. N.Y. Sept. 10, 2013) (providing an analysis of the post-*Conkright* obligation to apply a deferential standard of review where an appeal decision is issued after commencement of litigation). Although the Third Circuit has instructed that "post-commencement-of-litigation determinations under the aegis of attorneys are not benefit eligibility analyses by a plan administrator to which a court must defer," *Gritzer*, 275 F.3d at 295 n.4, the court certainly could have elected to defer to such a

decision under the proper circumstances, *see Wedge*, 2013 WL 4860157 at **8-9 (applying deferential standard of review when administrator's decision was thirteen days late). Here, however, there is no final decision to which the court may elect to defer.[4]

Accordingly, the court concludes that the *de novo* standard of review is appropriate in this case and will grant Plaintiff's motion in this regard.

### B. Scope of Discovery

In addition to his motion to determine the standard of review, Plaintiff also moves for discovery beyond the administrative record. In conducting a *de novo* review, the role of the court "is to determine whether the administrator made a correct decision." *Viera*, 642 F.3d at 413 (citation omitted). "*De novo* means [ ], as it ordinarily does, that the court's inquiry is not limited to or constricted by the record, nor is any deference due the conclusion under review." *Luby v. Teamsters Health Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184 (3d Cir. 1991) (quoting *Doe v. United States*, 821 F.2d 694, 697 (D.C.C. 1987) (noting that for the review of administrative decisions, "the reviewing court is not confined to the . . . record, but may pursue whatever further inquiry it finds necessary or proper to the exercise of

---

[4] The court is likewise unpersuaded by Defendants' argument that the court should remand the case to them for a decision on Plaintiff's July 15, 2014 appeal. The court has found no relevant case law to support such a proposition. Indeed, remanding at this time, and thereby permitting the plan administrator to avoid *de novo* review by belatedly deciding an appeal after the claimant has filed suit, would conflict with ERISA's stated purpose, namely, "protect[ing] . . . the interests of participants in employee benefit plans and their beneficiaries, . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b); *see also* 29 C.F.R. § 2560.503-1(l) ("In the case of a failure of a plan to establish or follow claims procedures . . . , a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA]." Accordingly, the court will not remand the case to provide Defendants with the opportunity to belatedly exercise their discretion.

the court's independent judgment."). Rather, the court has discretion to consider supplemental evidence that was not before the administrator. *Id.* at 1184-85; *Moran v. Life Ins. Co. of N. Am.*, Civ. No. 3:13-cv-0765, 2014 WL 5342677, *1 (M.D. Pa. Oct. 20, 2014) (citing *Viera*, 642 F.3d at 418); *see Laslavic v. Principal Life Ins. Co.*, Civ No. 11-cv-0684, 2013 WL 254450, *9 (W.D. Pa. Jan. 23, 2013) ("[A] court reviewing a benefits decision *de novo* has discretion to consider 'any supplemental evidence' presented by the parties."). If the record is sufficiently developed, however, "the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision, making its own independent benefit determination." *Luby*, 944 F.2d at 1185. Therefore, "[w]hen reviewing *de novo* a decision of the plan administrator, it is within the discretion of the court to expand the record as needed or proceed on the basis of the previously developed record." *Viera v. Life Ins. Co. of N. Am.*, 871 F. Supp. 2d 379, 385 (E.D. Pa. 2012). Thus, the court must determine whether the record is sufficiently developed to make an independent benefit determination. *Id.*

  Plaintiff submits that it would assist the court in conducting its *de novo* review to consider the following:

  (1) Defendant's prior interpretations of the Plan language at issue in other benefits decisions;

  (2) All documents, including internal memoranda between Defendants and third parties, where the Plan language was discussed or construed;

  (3) A full, un-redacted agreement between Harleysville and CDS regarding CDS's role and authority in this case;

  (4) Deposition testimony of claim representatives to ascertain why Defendants did not previously include

>>certain financial calculations in making benefits payments; and
>
>>(5) Discovery related to the CPAs who reviewed Plaintiff's benefits calculations, including determining why Defendants changed CPAs during the pendency of their review.

(Doc. 19, pp. 23-25 of 29). In addition, Plaintiff requests that the court conduct a *de novo* evidentiary hearing for purposes of supplementation of the record so as to permit full and fair review. (*Id.* at p. 25.)

        Defendants argue, on the other hand, that the record is sufficiently developed and requires no supplementation. Emphasizing that this is an unusual long term disability case because a medical determination on Plaintiff's disability is not at issue, Defendants cite to the nearly 2000-page administrative record and argue that it contains sufficient information to make a financial determination on Plaintiff's earnings and application of the Plan's use of the term "Current Monthly Earnings." Defendants highlight that the Administrative Record includes the pertinent tax returns, annual 401K summary reports, information related to Hamilton & Musser's treatment of financial planning income and taxation, the CPA reports obtained by Defendants, and the report of Plaintiff's retained expert. (Doc. 22, p. 26 of 31.)

        After considering the parties' arguments and reviewing the administrative record, the court concludes that the discovery Plaintiff seeks will not assist the court in its *de novo* review. In this case, the court must construe the Plan and then determine if and when Plaintiff's earnings exceeded the eighty-percent threshold for receiving disability benefits. In this regard, the administrative record already contains the Plan and the necessary financial documents that the court must rely on in making its decision. Any discovery relating to Defendants' previous

interpretations of the policy or why the claims representatives did or did not rely on certain information is not relevant to the court's *de novo* review, as the court gives no "deference or presumption of correctness" to the administrator's decisions. *Viera*, 642 F.3d at 414. The court likewise sees no relevance to additional information related to Defendants' CPAs or why Defendants changed CPAs during the pendency of their review. As the CPAs' reports are already included in the administrative record, a "sideline journey of uncertain destination appears unlikely to lead to the discovery of admissible evidence." *Viera*, 871 F. Supp. 2d at 386 (citing Fed. R. Civ. P. 26(b)). Indeed, much of the evidence Plaintiff seeks seems to relate to a potential conflict of interest, but a purported conflict of interest "is only pertinent to an abuse-of-discretion standard of review." *Viera*, 642 F.3d at 418.

Accordingly, the court concludes that this case can be properly resolved on the administrative record without the need for discovery. While the court recognizes that additional evidence might under some circumstances "increase the likelihood of an accurate decision," the possibility of increased accuracy here is speculative and would come at the price of increased litigation costs for both parties. *Viera*, 871 F. Supp. 2d at 386 (citing *Patton v. MFS/Sun Life Fin. Distribs. Inc.*, 480 F.3d 478, 492 (7th Cir. 2007)); *see also Atkins v. UPMC Healthcare Benefits Trust*, Civ. No. 2:13-cv-520, 2013 WL 6587170, *1 (W.D. Pa. Dec. 16, 2013) ("Discovery in an ERISA context must reflect the statute's goal of a speedy, inexpensive, and efficient resolution of claims.")

**III.**     **Conclusion**

In conclusion, because Defendants have failed to issue a decision on Plaintiff's appeal of CDS's January 16, 2014 adverse benefits determination, the court will apply a *de novo* standard of review. However, the court is confident that it can properly resolve this case on the administrative record and will not permit Plaintiff to conduct additional discovery.

                                                                    s/Sylvia H. Rambo
                                                              United States District Judge

Dated: August 10, 2015.

20